## STATE *v.* SCRIPTURE.

Where an indictment contains several counts for the same offense, a general verdict of guilty is good if the evidence supports any one of them.

One who, having entered a railroad depot through an open outer door, then breaks and enters an inner door, is guilty of breaking and entering the depot.

Where two corporations had the exclusive possession and control of a railroad depot owned by a third corporation, it is sufficient, in an indictment for breaking and entering the depot, to describe it as the railroad depot of such two corporations.

INDICTMENT, for breaking and entering a building in the day-time and stealing therein. The tenth count describes the building as the railroad depot of the Nashua & Lowell Railroad and the Boston & Lowell Railroad, &c.,

and the money stolen as the property of these two corporations.

The building in which the alleged larceny was committed is about eighty feet long by thirty wide, under one roof, used for a freight and passenger depot, connected with the Wilton Railroad, in Milford, in said county. At one end of the building, extending across its entire width, is a room used as a passenger room for gentlemen, with two outer doors entering directly into said room. Adjoining this is another room extending part of the way across the width of the building, used for a ticket office, with a door of communication between them, and furnished with counters and windows opening into the gentlemen's and ladies' passenger rooms in the usual way, for the sale of tickets. The other space in the building is divided into two rooms, one for the ladies' passenger room, and the other for a freight depot, with an outer door or doors opening directly into each, and a door of communication between the freight depot and the ticket office. Each of said rooms is partitioned off from the others, by partitions extending up to the ceiling, in the usual way of constructing rooms in dwelling-houses.

It appeared that the respondent entered the building in the daytime, through the outer door of the gentlemen's passenger room, which was then standing open, passed from that room into the ticket office by opening the door of communication between those rooms with a key, it then being locked, unlocked and took from a drawer in the ticket office a three dollar bill, which had been received on account of business done upon said railroad. The said railroad was at that time, and long before had been operated under a lease in writing to the Nashua & Lowell Railroad, and a contract in writing between said Nashua & Lowell Railroad, and the Boston & Lowell Railroad, each of said railroads being a separate corporation. It was admitted that the Wilton Railroad had title to said

building subject to said lease. The lease, contract and indictment may be referred to as a part of this case.

James Blood was introduced as a witness by the government, and testified that he was employed as ticket-master and freight agent of the railroad at said depot, and was responsible for the money received on account of the business of the road; that he was employed by Mr. Stark, the general agent of said railroads, under an agreement that he was to attend to the freight and passenger business at the Milford station, sell tickets, collect bills, and be accountable for the money received; that he settled his accounts with the road monthly, and that he settled with the road up to the first of June, 1860, and accounted for all money received up to that time; that from the first of June, through that month and the following month of July, Charles F. Conant had charge of the station as ticket-master and freight agent for him (Blood), he having transferred the business to him, but without any agreement or authority to that effect from Mr. Stark or any other officer of said railroads, and that his (said Blood's) relation to the roads and responsibility for the money under his agreement with Stark, were not in any way changed by this arrangement with Conant. The larceny of the three dollar bill was proved to have been committed on the 10th of July, 1860. Upon these facts and evidence, the respondent contended that the charge for breaking and entering could not be maintained, on the ground that there was no proof of a breaking of the depot, and that the ticket-office is not within any statute of this state, which declares the breaking and entering of certain specified buildings, and stealing therein, to be an indictable offense, and further objected that if the indictment could be sustained upon those grounds, the facts and evidence did not sustain either count in the indictment in respect to the alleged ownership of the money stolen and the building broken. The court

instructed the jury that if they believed the evidence, the respondent was guilty, and that they might return a general verdict of guilty upon all the counts, to which the respondent excepted. The jury returned a verdict of guilty. The respondent moved that the verdict be set aside and a new trial granted.

*G. Y. Sawyer*, for the respondent.

*A. F. Stevens*, Solicitor, for the state.

BARTLETT, J. As all the counts of the indictment are correct in form, if the evidence supports any one, there must be judgment on the verdict. *Hudson* v. *The State*, 1 Blackf. 319; 1 Chitt. Cr. Law 640, note.

It is said that "if a person leaves his doors or windows open, it is his own folly or negligence, and if a man enter therein it is no burglary; yet if he unlock an inner or chamber door, it is so." 4 Black. 226. The same doctrine is laid down in 2 East P. C. 488, 489; 1 Hale 553; Whart. Cr. Law 600; 1 Russ. Crimes 790, 791. Com. Dig. Justice P. 3; Rosc. Crim. Ev. 340; 7 Dane's Abr. 136; 3 Greenl. Ev., sec. 76; *State* v. *Wilson*, Coxe 439. From these authorities it appears that one who, having entered through an open outer door of a dwelling-house, then breaks and enters an inner door, is guilty of breaking and entering the dwelling-house. The respondent was, therefore, properly convicted of breaking and entering a railroad depot, under chapter 2078 of the Pamphlet Laws (Laws of 1858, 1983).

As the Nashua and Lowell Railroad and the Boston and Lowell Railroad jointly had the exclusive possession and control of the depot under the contract and lease, it might well be laid as their depot. *Rex* v. *Rees*, 7 C. & P. 568; *State* v. *Rand*, 33 N. H. 216. Under the contract between the two corporations, the bank note stolen was their prop-

State *v.* Scripture.

erty. The tenth count sufficiently describes the building as the railroad depot of these two corporations, and correctly lays the ownership of the money in the same parties. It is unnecessary to inquire if the inner room broken was an office within the meaning of chapter 1094 of the Pamphlet Laws (see *Commonwealth* v. *White*, 6 Cush. 181), or to examine the other questions argued in this case; for the tenth count, being supported by the evidence, there must be

*Judgment on the verdict.*