VICTOR AMERICAN FUEL CO. v. TOMLJANOVICH.

(Circuit Court of Appeals, First Circuit. May 19, 1916.)

No. 1189.

1. MASTER AND SERVANT ⬅118(1)—INJURIES TO SERVANT—SAFE PLACE OF WORK.

In this case a mine operator, under its common-law duty to furnish employés with reasonably safe place of work and safe appliances, should equip coal cars with suitable drags, so that, when loaded in one of several chambers in the mine, they will not escape and injure the miners.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 209; Dec. Dig. ⬅118(1).]

2. APPEAL AND ERROR ⬅193(3), 195—PRESENTATION OF GROUNDS OF REVIEW IN COURT BELOW—NECESSITY.

Though a complaint as amended might, under the rules prohibiting duplicity, have been subject to special demurrer, or objection might have been made to the mode of amendment, no objections or demurrers having been made below, the matter cannot be reviewed on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1226, 1149; Dec. Dig. ⬅193(3), 195; Pleading, Cent. Dig. §§ 1355, 1409.]

3. TRIAL ⬅29(1)—MODE OF TRIAL—COMMENTS OF COURT.

In an action in the federal courts, it is not improper for the judge to suggest to plaintiff that he might elect on which count to proceed.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 80, 508; Dec. Dig. ⬅29(1).]

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. PLEADING ⬅246(3)—AMENDMENTS—IMMATERIAL AMENDMENTS.

In a coal miner's action, where he could rely either on the statute or the common law, the granting of an amendment to conform the complaint to the exact words of the statute was not error.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 680; Dec. Dig. ⬅246(3).]

5. PLEADING ⬅248(12)—AMENDMENTS—NEW CAUSE OF ACTION.

In a servant's action, where he relied on the master's violation of statute as well as of his common-law duty to furnish a safe place for work, an amendment whereby the two grounds of liability were inserted in one count of the complaint, having formerly been set forth in two counts, is not objectionable as stating a new cause of action, in the absence of a special demurrer.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 694; Dec. Dig. ⬅248(12).]

6. APPEAL AND ERROR ⬅237(5)—REVIEW—MATTERS REVIEWABLE.

Where there was, at the trial, no specific motion for direction of a verdict in defendant's favor on the ground that the evidence, or the weight of the evidence, was against plaintiff's contention, although there were motions for directed verdicts on other grounds, the questions whether the evidence supported plaintiff's contention or the weight of the evidence was against him, cannot be reviewed on appeal; the power of the appellate court being limited to exceptions actually taken at trial.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. ⬅237(5).]

7. TRIAL ⬅256(1)—INSTRUCTIONS—REQUESTS.

With the rule applied that, where the rulings given were prima facie correct, appellant, if desirous of anything further, should bring the rulings to the attention of the court.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 628, 633; Dec. Dig. ⬅256(1).]

8. EVIDENCE ⬅558(11)—OPINION EVIDENCE—CROSS-EXAMINATION OF EXPERTS.

On the cross-examination of medical experts, great latitude is allowed, and excerpts from medical works may be read to test the experts' knowledge.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2377, 2379; Dec. Dig. ⬅558(11); Witnesses, Cent. Dig. § 932.]

9. EVIDENCE ⬅364—PERSONAL INJURIES—MORTALITY TABLE.

In a personal injury action, the mortality tables may be received in evidence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1520; Dec. Dig. ⬅364.]

In Error to the District Court of the United States for the District of Maine; Clarence Hale, Judge.

Action by Paul Tomljanovich, per pro. ami, against the Victor American Fuel Company. There was a judgment for plaintiff, and, motions for new trial (227 Fed. 951; 230 Fed. 467) being overruled, defendant brings error. Affirmed.

Frederick W. Hinckley, of Portland, Me. (Caldwell Yeaman, of Denver, Colo., and George H. Hinckley, of Portland, Me., on the brief), for plaintiff in error.

A. T. Hannett, of Gallup, N. M., and George C. Wheeler, of Portland, Me., for defendant in error.

Before PUTNAM and DODGE, Circuit Judges, and ALDRICH, District Judge.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

PUTNAM, Circuit Judge. In this opinion the word "plaintiff" means the plaintiff in the District Court, and the word "defendant" means the defendant in that court.

[1] This is a suit for an injury caused to the plaintiff by the slipping away of a loaded car of coal in one of the chambers of a mine in New Mexico, with the result that the car was derailed, and, as the consequence of derailing, it broke loose and fell on the plaintiff, who was working as a miner at a point below the place where the car broke loose. There is no doubt that the statutory law of New Mexico, where the mine is located, required that one or more drags should have been attached to the car, which one or more drags would undoubtedly have derailed it, and prevented a collision with the plaintiff. It is not necessary to state the legislation of New Mexico at length, because, independently of any legislation, the common law obliged the defendant to provide a suitable drag or drags, which were the customary and simple preventive of such an accident, which was liable to occur at any time; and, if they had been provided, this accident would not have occurred. Under the circumstances, the furnishing of a suitable drag or drags was such an obvious and common incident, and so simple and essential a matter, that the lack of such furnishing, either under the statute or aside from the statute, rested on the defendant as a part of its obligation to furnish a suitable and reasonably safe place for the employment of the plaintiff, from which the defendant could not have relieved itself, all as shown by the settled rules of law.

There is also no question that if the defendant had furnished suitable drags at the hand of its servants, who were the coemployés of the plaintiff, so that any failure to use the drags was merely a failure on the part of his coservants, this fact would have been a defense to the defendant, whether the cause of action was based on the statutes of New Mexico or rested on the common law. The plaintiff testified that no such drags were furnished by the defendant, and he had never seen one in the mine; and one question is whether or not the testimony of the plaintiff, whose testimony was wholly unsupported, should have been accepted by the jury or should be set aside by this court. That proposition we will take up in its proper order.

The amount involved was a very large one; the injuries to the plaintiff having been very substantial, and the judgment rendered in his favor having been for $15,325. While the injuries occurred in New Mexico, the trial was at Portland, Me., and occupied several days, with many controversies and numerous exceptions, which, however, so far as we are concerned, on sifting out come down to few propositions.

The first question arises out of the fact that there were originally two counts in the plaintiff's declaration, one apparently based on the local statute, which required a drag, and the other based on the common law, which made the defendant responsible on the proposition substantially to the effect that the absence of a drag was, under the circumstances we have referred to, a failure to provide suitable equipment. There seems to have been some uncertainty as to the steps

taken by the various parties in this respect as to what they sought to accomplish; but the effect was that, before the verdict was rendered, and within the time within which, in accordance with the practice in the federal courts, such an amendment might have been allowed, the plaintiff waived his second count, and amended his first count by carrying to the latter so much of the second count as left it a count alleging lack of a drag in the manner required by the statutes of New Mexico, and also coupled with it an allegation that the drag was not furnished, and that, in the absence of the drag, there was at common law a failure to furnish proper appliances, or a proper place for labor, in accordance with the well-known rules of the common law.

[2] It is possible that, under the rules prohibiting duplicity in pleading, such a form of pleading would have been subject to a special demurrer, or an objection might have been made to thus amending the first count on the ground that it was duplicating the pleadings, and therefore offering a form of pleading which was subject to a special demurrer; but, while there were other pro and con objections and discussions about this and about proceeding on the consolidated cause of action, we are unable to find that there was any objection or exception taken of the class which was suitable for the condition in which the amendments left the pleadings, or that there was any action in these respects by the trial court which was substantially injurious to the defendant, or as to which it could have taken any exceptions except in the special manner to which we have referred, and which it did not take. Therefore we pass by that whole topic as of no consequence in the appellate tribunal, and without any further explanation in reference thereto.

The propositions raised by the assignment of errors in reference to this matter of amendments are entirely of a general character. The bulk of them relate to the matter of proof with reference to the count as amended, which does not touch any of the questions now raised to which we have referred. Among other things, the assignment says that there is no testimony that the place where the plaintiff was engaged in mining of coal was unsafe. This does not relate to the matter of making the amendments, but to the propositions which came in issue after the amendments were made, and which were met by the fact that the matters covered by the amendments were matters of the kind to which we have already referred as being what is imposed by law on employers with reference to what are usual, customary, and simple methods of avoiding dangers.

[3] It is also assigned as error that the court erred in suggesting to the plaintiff that he might elect on which count to proceed; but in this respect the entire conduct of the trial was fully in harmony with the practice in the federal courts, whatever it may be elsewhere.

[4] In the same way, the objection made by the assignment of errors that the court erred in suggesting to the plaintiff that he might amend by inserting the word "willful," which was required to conform to the exact language of the statute, was in fact an immaterial matter as the case terminated, because the verdict rested, not only on the statute, but also on the common law.

[5] Neither was it true, as assigned by the assignment of errors, that the amendments introduced a new and vital issue; and, in conclusion, everything further raised by the assignment of errors with reference to these amendments and the proceedings under them, will be disposed of by what we have to say with regard to the demand that the verdict be set aside with relation to anything which appertains to the merits of the case, particularly to the testimony of the plaintiff.

[6] The burden of the case depends on the motions to direct a verdict, which were refused, and are brought here by exceptions. The federal courts adhere closely to the English practice, by which, in ordinary cases, the question of setting aside a verdict as against evidence is for the trial judge. The practical rule is stated, though perhaps too strongly, in The Connemara, 108 U. S. 352, 360, 2 Sup. Ct. 754, 758 (27 L. Ed. 751) as follows:

"The facts are decided by the jury in the first instance. If the jury return a general verdict, clearly against the weight of evidence, or assessing exorbitant damages, the court in which the trial is had may set aside the verdict and order a new trial. But a court of error, to which the case is brought by bill of exceptions, or appeal, on matter of law only, cannot set aside the verdict, unless there is no evidence from which the conclusion of fact can be legally inferred."

Indeed, in the earliest cases in the Supreme Court, it was doubted whether, after all, a motion to set aside a verdict as against evidence was not an appeal on a mere question of fact as to which the Supreme Court could have had no jurisdiction (Marine Insurance Company v. Young, 5 Cranch, 187, 190, 3 L. Ed. 74, decided in 1809); although in the same case it was finally concluded that it would be improper for the Supreme Court to determine whether the inferior court ought or ought not to have granted the motion for a new trial on the ground that the verdict was contrary to evidence. In Maryland Insurance Company v. Ruden's Adm'r, 6 Cranch, 338, 340, 3 L. Ed. 242, it was ruled that the party against whom a verdict was rendered had no remedy except a new trial to be granted by the court in which the verdict was found. This was strictly the English rule; but, after all, it was settled, as in the case first cited, that it was only where there was no evidence, or there was nothing which, with all the inferences which the jury could draw from it, would sustain a verdict, that the Supreme Court had jurisdiction over the question.

Until it was so settled, the court had some difficulty in pointing out the difference in practice between the state courts and the Federal courts on this question. Brown v. Clarke, 4 How. 4, 15, 11 L. Ed. 850. Finally, the whole matter got settled down, as we have said; but, in Railway Company v. Heck, decided at the October term, 1880, 102 U. S. 120, 26 L. Ed. 58, Chief Justice Waite said: "Our power is confined to exceptions actually taken at the trial," adding some explanation thereto which is not important here. Also in Randall v. Baltimore & Ohio Railroad Company, decided September 10, 1883, 109 U. S. 478, 482, 3 Sup. Ct. 322, 324 (27 L. Ed. 1003) in an opinion by Mr. Justice Gray, it was declared that "it is the settled law of this court that, when the evidence given at the trial, with all inferences that the jury could justifiably draw from it, is insufficient to support a verdict for

the plaintiff, so that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant." It proceeds that it is now settled in the House of Lords "that it is for the judge to say whether any facts have been established by sufficient evidence, from which negligence can be reasonably and legitimately inferred; and it is for the jury to say whether from those facts, when submitted to them, negligence ought to be inferred."

These expressions in this last case are cited in Louisville & Nashville Railroad Company v. Woodson, 134 U. S. 614, 621, 10 Sup. Ct. 628, 630 (33 L. Ed. 1032) as furnishing a rule by which the jurisdiction of the Supreme Court over exceptions can be measured; that is to say, that such exceptions may justly be taken "when the evidence given at the trial," with all the inferences that the jury could justifiably draw from it, is insufficient to support a verdict, a writ of error will lie to the Supreme Court. It may be rather strong to say, as in the language of Schuchardt v. Allen, 1 Wall. 359, 371 (17 L. Ed. 642) that "a motion for a new trial in the courts of the United States is addressed to the sound discretion of the tribunal which tried the case, and to grant or refuse it cannot be made the subject of exception"; but it is safe to say that the action of the trial court cannot be brought to the Supreme Court for review, unless there has been some specific conclusion on its part granting or refusing a new trial on the ground that it is either for or against the weight of the evidence.

Certainly it is safe to say that, in a case like the present, where the real issue was whether or not the drags were furnished by the defendant, and as to which issue the testimony was conflicting, that of the most important witness being directly to the contrary, no refusal to rule that the evidence was insufficient to warrant a verdict can be held erroneous in this court, unless the record shows express application for such ruling made to the trial court upon that specific ground alone, and distinctly raising the question as to the weight of the evidence. In the present case there was no such specific proceeding in the trial court. There were several motions for a direction of a verdict, if a mere request for such direction could be regarded as meeting the requirements of the case. But they were, however, all deficient. They are briefly stated in the introductory current review of the proceedings of the trial court; but they were stated fully, subsequently, by the exceptions drawn out at length. One motion was based on a request to direct a verdict for the defendant on the second count, which had been abandoned by the plaintiff with the express statement on his part that he was proceeding on the first count only. Another was based on a request that the trial court direct a verdict for the defendant on the first count, which was coupled with another request for a general direction of a verdict for the defendant on the entire case, without distinguishing between the counts. None of these requests for verdicts were clean requests on the ground that the evidence, or the weight of the evidence, was not with the defendant; but all were coupled with certain propositions mingling with the motions

claims for certain incidental propositions which so affected the rulings of the court that they were not based merely on the evidence, but induced or compelled the court, in either case, to rule on the motions expressly "as matter of law," and so stated; so that as the record stands we have no clean, direct ruling of the trial court on the mere issue whether or not the jury might be allowed to find on the evidence, or on the weight of the evidence, a verdict in favor of or against the defendant. Therefore, the court was never asked to rule as on the proposition made by Chief Justice Waite in Railway Company v. Heck, 102 U. S. 120, 26 L. Ed. 58, already cited, that the power of the Supreme Court "is confined to exceptions actually taken at the trial." The whole is confused from beginning to end; and we are left without what the common law always insisted on under the English statute of exceptions, that is, a ruling squarely on the proposition whether or not the finding of the verdict of the jury was in harmony with the evidence or the weight of evidence. Therefore, without undertaking to determine whether or not, under the federal practice, the Supreme Court has jurisdiction over an issue where there is direct testimony, as in the present case, in favor of the plaintiff, although evidently subject to criticism, we are not called on to determine ultimately whether in such a case the verdict can be disturbed because it is against the weight of evidence. The powers of the appellate court in matters of this sort from any point of view were considered effectively in this court in Odell Mfg. Co. v. Tibbetts, 212 Fed. 652, 656, 129 C. C. A. 188, where under the federal system the peculiar powers of the trial judge, with reference to motions to set aside a verdict where there is a conflict of proofs, was considered, and it was said, at page 657 (129 C. C. A. 193), that such things were generally not for the court, and especially not for the appellate court.

The foregoing disposes of what are really the essential questions in this case. The defendant submits to us for our consideration the ruling of the court instructing the jury apparently to the effect that the disregard of the New Mexico statutes on the part of the defendant was conclusive as against the defendant. This ruling would make some difficulty if it had been made the subject of any assignment of alleged error; but, as there is no such assignment, the question involved in it is not before us.

[7] Also, the plaintiff in error objects that the court refused to give a requested ruling as to the effect of the knowledge shown by the testimony of the plaintiff, that he knew the defendant was customarily disregarding the statutes requiring the use of drags; but the ruling of the court on this point was prima facie and ordinarily correct, and, if anything further was required, it should have been brought to the attention of the court, as shown in Texas & Pacific R. R. Co. v. Volk, 151 U. S. 73, 14 Sup. Ct. 239, 38 L. Ed. 78.

[8] With reference to reading from medical text-books on cross-examination, it is true that the courts have held, especially the Massachusetts Supreme Judicial Court, that counsel cannot, in their own case, and as a direct part thereof, thus read; but with reference to

the cross-examination of medical witnesses, very great latitude is necessarily allowed for indubitable reasons. All that was read in this case was as a part of the cross-examination of a medical witness, and, as said by the court, for the purpose of testing the knowledge of the witness.

In like manner, the proof of sundry conversations with the plaintiff which were objected to, but were admitted, were, so far as we can see from anything the record shows, entirely immaterial and harmless. They related to a conversation which may have been entirely friendly, and nothing more than that. The defendant did not go far enough in connecting the surroundings of the case, either by the statements of counsel or otherwise, so that we can apprehend their effect.

[9] The defendant objected to the proofs offered through standard life tables, but these were only the proofs ordinarily admitted, and which cannot be supplied in any other way. The defendant could have called for any qualifications desired in accordance with Texas & Pacific R. R. Co. v. Volk, already cited.

The judgment of the District Court is affirmed, with interest; and defendant in error recovers his costs of appeal.